449 F.2d 1202
 Richard D. LAMM, individually and as a citizen and taxpayer of the State of Colorado and the United States and as a duly elected representative of the House of Representatives of the State of Colorado, and on behalf of all those similarly situated, Plaintiff-Appellant,
v.
John S. VOLPE, Secretary of Transportation, et al., Defendants-Appellees.
 No. 71-1131.
 United States Court of Appeals, Tenth Circuit.
 October 27, 1971.
 
 W. Allen Spurgeon, Asst. U. S. Atty. (argued), Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., with him on the brief), for defendants-appellees.
 Richard D. Lamm, pro se (Howard B. Gelt, Denver, Colo., with him on the brief), for plaintiff-appellant.
 Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Lamm, individually as a citizen and taxpayer of the State of Colorado and of the United States, and as a member of the Colorado Legislature, appeals from a summary judgment granted by the district court in favor of the defendants-appellees. Lamm seeks a declaratory judgment that 23 U.S.C. § 131 is an usurpation of the police power reserved to the State of Colorado in that it is violative of the Tenth Amendment of the United States Constitution. Lamm brings this class action against John S. Volpe, Secretary of Transportation, John N. Mitchell, U. S. Attorney General, and Frank C. Turner, Federal Highway Administrator. Lamm contends on appeal that: (1) there is a case or controversy involved; (2) this is not an unconsented suit against the United States; and (3) he has standing to sue.
 
 
 2
 Section 131 is a part of the 1965 Highway Beautification Act which regulates outdoor advertising along federal-aid highways. It provides that if the Secretary of Transportation decides that any state has not provided "effective control" of outdoor advertising along federal-aid highway systems that the Federal-Aid Highway allotment to that state will be reduced by 10%. 23 U.S.C. § 131(b). Just compensation must be paid for the removal of outdoor advertising. 23 U.S.C. § 131(g). The Federal Government is to provide 75% of the compensation and the states are to contribute 25%. If federal highway funds were to be reduced 10% in Colorado it would amount to $6 million per year.
 
 
 3
 Lamm contends that Colorado's Legislature has been prevented from eliminating billboards along the highways because Congress has failed to appropriate its share of compensation and because Attorney General Clark interpreted the "just compensation" provision to mean that every state must contribute 25% or have their federal highway funds reduced by 10%. Compliance with Section 131 is mandatory on the states.
 
 
 4
 Lamm has introduced several bills in the Colorado Legislature which he believes would provide effective control of outdoor advertising through exercise of the state police power in lieu of just compensation. Although he does not specifically identify to the police power relied upon, we assume here that his bills declared outdoor advertising adjacent to certain highways a public nuisance, subject to destruction or abatement as injurious to public safety. We recognize that police power is a matter of legislative prerogative. In this field the legislature has wide discretionary powers. It includes everything essential to public safety, health, and morals. Cottrell Clothing Company v. Teets, 139 Colo. 558, 342 P.2d 1016 (1959). Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged or destroyed. Chicago B. & Q. Railway v. State of Illinois ex rel. Drainage Comm'rs., 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1906); Appeal of White, 287 Pa. 259, 134 A. 409 (1926); Annot., 53 A.L.R. 1215 (1928).
 
 
 5
 Here the power of regulation has not been preempted by the Congress. But that begs the point. The Congress has clearly determined that the "taking" of outdoor advertisements adjacent to federal-aid highways required "just compensation". The Tenth Amendment[1] has been construed "as not depriving the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end." United States v. Darby, 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941). And while the United States is "not concerned with, and has no power to regulate local political activities as such of state officials, it does have power to fix the terms upon which its money allotments to states shall be disbursed." Oklahoma v. U. S. Civil Service Comm'n., 330 U.S. 127, 143, 67 S.Ct. 544, 553, 91 L.Ed. 794 (1947). That case involved a constitutional challenge by the State of Oklahoma under the Tenth Amendment to the authority of the United States Civil Service Commission to require the withholding of a certain share of Oklahoma's federal highway funds by reason of the State's violation of terms of the Hatch Act. The Court recognized that Oklahoma had a legal right to receive federal highway funds, subject to the condition that the limitation on the right to receive the funds complied with the Constitution and the congressional enactments. The Court held that Congress has power to fix the conditions for review of administrative orders. Judicial cognizance was exclusively provided on review of the orders of the Civil Service Commission. See also American Power & Light Co. v. S. E. C., 325 U.S. 385, 65 S.Ct. 1254, 89 L.Ed. 1683 (1945).
 
 
 6
 The Highway Beautification Act provides that no federal aid highway funds shall be withheld by the Secretary of Transportation until the state involved is provided an opportunity for a hearing. Appellate review of any order entered by the Secretary is accorded to an aggrieved state. 23 U.S.C. § 131(l). The District Court granted appellees' Motion for Summary Judgment. The Court held that (1) the case was not then justiciable in that the State of Colorado was not deprived of any funds; and (2) the appellant, Lamm, was without standing to bring the action.
 
 
 7
 There are no statutes authorizing direct suits against the United States or federal officers governing the subject matter involved here. The Congress has, however, provided an administrative remedy available only to an aggrieved state from any decision of the Secretary of Transportation to withhold federal highway funds. 23 U.S.C. § 131(l). Under that same statute, it is provided that any funds so withheld must remain available for apportionment to the state in accordance with a final judgment following opportunity for judicial review if sought by a state. It is not necessary here to determine whether the administrative remedy made available to an aggrieved state is exclusive. See Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). It is important to note, however, that Congress recognized only an aggrieved state as the party entitled to the opportunity for a hearing and the prescribed judicial review.
 
 
 8
 Lamm filed this action individually as a citizen and taxpayer of Colorado and of the United States, as an elected representative of the House of Representatives, and on behalf of those similarly situated. He has no standing individually as a citizen. He cites no case in which the United States Supreme Court has entertained an action brought to vindicate the public interest by a citizen having no legal interest of his own. He presents no authority to bring a class action. The "taxpayer" theory of standing is the only contention we deem worthy of consideration.
 
 
 9
 The cases cited in appellant's brief as authorities supporting taxpayer standing are without merit. In Sierra Club v. Hickel, 433 F.2d 24 (9th Cir. 1970) no contention of standing under the "taxpayer" theory was advanced. In Doremus v. Board of Education, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952), the Court rejected the taxpayer's standing claim. There the Court noted that taxpayer actions to prevent misuse of public funds have been upheld on state and municipal levels but denied on the federal level when the challenge is directed exclusively to the taxing and spending power of the Congress.
 
 
 10
 In Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the taxpayer attacked a federal spending program under the Maternity Act of 1921 as violative of powers reserved to the states under the Tenth Amendment. The Court found that she lacked standing because she had not alleged a congressional breach of a specific constitutional limitation upon its taxing and spending power.
 
 
 11
 In Flast v. Cohen, 392 U.S. 83, 88 S. Ct. 1942, 20 L.Ed.2d 947 (1968), the Court found taxpayer standing. There the taxpayers challenged federal expenditures to finance instructions in and purchase of textbooks for use in religious schools. The Court held that where the federal taxpayer can establish a "nexus" between his status and a constitutional limitation imposed upon the taxing and spending power of the Congress (there the Establishment Clause of the First Amendment), he has standing. Significantly, however, the Court, in distinguishing Flast from Frothingham noted that:
 
 
 12
 "* * * The allegations of the taxpayer in Frothingham v. Mellon, supra, were quite different from those made in this case, and the result in Frothingham is consistent with the test of taxpayer standing announced today. The taxpayer in Frothingham attacked a federal spending program and she, therefore, established the first nexus required. However, she lacked standing because her constitutional attack was not based on an allegation that Congress, in enacting the Maternity Act of 1921, had breached a specific limitation upon its taxing and spending power. The taxpayer in Frothingham alleged essentially that Congress, by enacting the challenged statute, had exceeded the general powers delegated to it by Art. I, § 8, and that Congress had thereby invaded the legislative province reserved to the States by the Tenth Amendment." 392 U.S. 83 at 104-105, 88 S.Ct. at 1955.
 
 
 13
 Following oral arguments, Lamm submitted "traditional cases" in further support of his standing contention. He cited Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944 (1970); Protestants and Other Americans United for Separation of Church and State v. Watson, 132 U.S.App.D.C. 329, 407 F.2d 1264 (1968); Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and School Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). These decisions do not aid Lamm. In each case the challenge to the taxing and spending power was anchored to an alleged constitutional provision restricting its exercise. The Tenth Amendment does not raise the challenge. Here Lamm relies upon the same standing contention rejected in Frothingham, supra. Finding lack of standing, we need not reach the sovereign immunity issue.
 
 
 14
 We further hold that this case has been rendered moot by reason of enactment by the Colorado Legislature of a just compensation statute in compliance with Section 131 of the Federal Act. The appeal became moot by reason of passage and gubernatorial approval of Senate Bill No. 36 on June 2, 1971. United States v. Alaska S. S. Co., 253 U.S. 113, 40 S.Ct. 448, 64 L.Ed. 808 (1920); Maritime Service Committee, Inc. v. International Organization of Masters, Mates and Pilots, AFL-CIO, 394 F.2d 160 (3rd Cir. 1968); Moran v. Carswell, 384 F.2d 720 (5th Cir. 1967); Boggess v. Berry Corporation, 233 F.2d 389, 16 Alaska 256 (9th Cir. 1956). We are not required to reach the merits as to any points on appeal raised by Lamm because the case has been rendered moot. Brownlow v. Schwartz, 261 U.S. 216, 43 S.Ct. 263, 67 L.Ed. 620 (1923); Heitmuller v. Stokes, 256 U.S. 359, 41 S.Ct. 522, 65 L.Ed. 990 (1921); Howard v. Wilbur, 166 F.2d 884 (6th Cir. 1948).
 
 
 15
 We affirm.
 
 
 
 Notes:
 
 
 [1]
 "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."