829 F.2d 38
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DALE E. FRANKFURTH, D.D.S., a corporation, Plaintiff-Appellant,
v.
CITY OF DETROIT, Creighton C. Lederer, Henry Pokay, Fred D.
Watts, William Immergluck, Roger Jablonski, All-Rite
Wrecking Company, Irving Chaiken, John Doe, Richard Doe, and
Jane Doe, Defendants-Appellees.
 Nos. 86-1476, 86-1825
 United States Court of Appeals, Sixth Circuit.
 September 17, 1987.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and GIBBONS*, District Court Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, Dale E. Frankfurth, D.D.S., P.C., filed this action in federal district court against defendants-appellees City of Detroit and several of its employees, and All-Rite Wrecking Company ('All-Rite') claiming damages resulting from the demolition of a building owned by appellant. Appellant's complaint sought relief pursuant to 42 U.S.C. Sec. 1983 and 1988, alleging that the governmental action deprived appellant of property without due process of law and constituted a taking of property without just compensation. Appellant's amended complaint also sought relief under state law by alleging that the demolition of the building constituted a trespass and a taking of property without just compensation in contravention of Article 10, Section 2 of the Michigan Constitution. The district court dismissed appellant's Sec. 1983 claims and his claim brought under the Michigan Constitution. The court also dismissed appellant's pendent state claim based on trespass as to All-Right, but retained jurisdiction on this issue as against the remaining appellees. After argument by the parties, the district court entered judgment on the trespass issue in favor of appellees. For the reasons set forth below, we AFFIRM the decision of Judge Horace W. Gilmore, United States District Court, Eastern District of Michigan.
 
 
 2
 Appellant was the owner of a building which was demolished by the City of Detroit. Appellees concede that the building had been demolished without appellant receiving prior notice. They argue, however, that the failure to notify was not intentional, but rather the result of negligence by a single clerk who did not mail the appropriate notice.
 
 
 3
 The building in question had been found by the Detroit City Council ('Council') to be in a dangerous condition warranting removal as early as October 29, 1980. At that time, the Council referred the matter to the Buildings and Safety Department for a hearing to give the then 'owner the opportunity to show cause why said structure should not be demolished or otherwise made safe.' On March 11, 1981, the matter was again brought to the Council's attention, and it again determined that jurisdiction should be returned to the Buildings and Safety Department for the new owner to be notified.
 
 
 4
 Due to the clerk's error, appellant was not notified, and on January 21, 1982, an inspection of the building indicated that it was open to trespass and constituted a fire hazard. Consequently, on January 28, 1982, Council was again advised of the building's condition, and the building was subsequently demolished pursuant to Council resolution.
 
 
 5
 With respect to the 1983 claim, the district court held that the City of Detroit had, in fact, failed to give appellant notice of the pending demolition, but this failure was the product of an unauthorized act by a city employee as opposed to a city policy. The district court thus dismissed the claim based on Parratt v. Taylor, 451 U.S. 527 (1981).
 
 
 6
 The district court also dismissed the fifth amendment takings claim, holding that appellant was not entitled to any compensation when the demolition was done pursuant to the state's general police power. The district court retained jurisdiction over appellant's state-based claim of trespass against the city and held that the City of Detroit was protected under governmental immunity.[1]
 
 
 7
 On appeal, appellant argues that the district court erred in dismissing his 42 U.S.C. Sec. 1983 claim. Appellant asserts that the court erred in holding that a Sec. 1983 action could not be based on a simple, random and unauthorized act of a clerk. Appellant also argues that the trial court could not dismiss the Sec. 1983 claim because appellant no longer has an adequate post-deprivation hearing available in state court. We disagree.
 
 
 8
 In support of his position that the failure to provide him notice is actionable under Sec. 1983, appellant relies on Pembaur v. Cincinnati, 106 S. Ct. 1292 (1986). Pembaur concerned the forceful entry into an office by police officers to serve subpoenas. The officers were denied entrance. The police officers called their supervisor requesting directions. They were told by their supervisor to call the Prosecutor's Office for instructions. The Prosecutor's Office told the officers to go in and get the witnesses, which they did, utilizing an axe to gain entrance. A 42 U.S.C. Sec. 1983 action was filed. Pembaur, 106 S. Ct. at 1294-95.
 
 
 9
 Concerning the issue of whether a governmental entity could be held liable under a 42 U.S.C. Sec. 1983 claim for a single act, the Supreme Court held it could under certain limited circumstances:
 
 
 10
 If the decision to adopt [a course of action tailored to a particular situation] is properly made by the government's authorized decision makers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.
 
 
 11
 Having said this much we hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to Sec. 1983 liability . . . We hold that municipal liability under Sec. 1983 attaches--where and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.
 
 
 12
 Pembaur, 106 S. Ct. at 1299-1300 (citations omitted). The court held the municipality liable because the sheriff and the prosecutor who directed the officers were both policy makers. Pembaur, 106 S. Ct. at 1300.
 
 
 13
 In the instant case, no city policy maker directed that appellant's building be demolished without notice. Indeed, repeatedly in the past, the Council had refrained from ordering demolition and instead directed the Building and Safety Department to notify the owners. Appellant was not given notice of the demolition because the clerk forgot to mail the notice. This action was random and unauthorized. The clerk did not act pursuant to an established policy and procedure. Thus, appellant's Sec. 1983 claim must fail. See Parratt v. Taylor, 451 U.S. 527 (1981).
 
 
 14
 Appellant also argues that in Parratt and Hudson v. Palmer, 468 U.S. 517 (1984), the court, in finding no valid claim under Sec. 1983, emphasized that plaintiffs had available to them adequate post-deprivation processes in the state courts to assess the propriety of the conduct complained of. Appellant argues that the absence of an adequate state remedy in this action precluded the trial court from dismissing his 42 U.S.C. Sec. 1983 action. We disagree.
 
 
 15
 In Daniels v. Williams, 106 S. Ct. 662 (1986), plaintiff brought a Sec. 1983 action alleging that he suffered a deprivation of his liberty interest in being free of bodily injury. Plaintiff sought to recover damages from injuries allegedly sustained from a fall caused by a pillow negligently left on the stairs by a correctional officer. In relying on Hudson, plaintiff argued that he had no adequate state remedy. Thus, he alleged that the deprivation was without due process of law. Daniels, 106 S. Ct. at 663-664.
 
 
 16
 The Supreme Court held that plaintiff's due process claim was properly dismissed by the trial court and found that 'the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property.' Daniels, 106 S. Ct. at 663. In so holding, the court overruled Parratt to the extent that the case held that even a negligently caused loss amounted to a fourteenth amendment deprivation of life, liberty or property. The court further noted that '[w]here a government official's act causing injury to life, liberty or property is merely negligent, 'no procedure for compensation is constitutionally required." Daniels, 106 S. Ct. at 666 (quoting Parratt v. Taylor, 451 U.S. at 544).
 
 
 17
 In the present case, appellant's failure to receive notice was due to the negligent act of a clerk. Because the act was negligent, no fourteenth amendment deprivation is involved and there is no constitutional need to provide a remedy. Thus, the absence of a state remedy by appellant does not act to preclude the dismissal of his Sec. 1983 claim.
 
 
 18
 Appellant next argues that the district court erred in holding that he was entitled to no compensation for the demolition of the building. We disagree.
 
 
 19
 Federal courts have recognized that injury to, or destruction of, property pursuant to a government's police power does not require the payment of compensation. See Chicago B & Q Railway v. State of Illinois ex rel. Drainage Commissioners, 200 U.S. 561 (1906); Lamm v. Volpe, 449 F.2d 1202, 1203 (10th Cir. 1971), cert. denied, 405 U.S. 1075 (1972). In Lamm the court noted:
 
 
 20
 Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged or destroyed.
 
 
 21
 Lamm, 449 F.2d at 1203 (citations omitted). In McLeod v. County of Santa Clara, 749 F.2d 541, 545 (9th Cir. 1984) cert. denied, 472 U.S. 1009 (1985), the court stated that '[i]f a regulation or prohibition is a valid exercise of police power, there is no taking if economically viable use of the property remains'. The court went on to state that as long as the restrictions did not interfere with primary investment backed expectations, there is no taking that requires compensation, even if the value of the land has been diminished. Id. at 547.
 
 
 22
 In this case, appellant is entitled to no compensation for the demolition of the building. The building was an open, vacant fire hazard that was demolished pursuant to the City of Detroit's police power to abate dangerous conditions. Appellant still retains ownership of the property and can use it for his stated purpose of building a dental clinic. Thus, we find that the demolition did not constitute a taking.
 
 
 23
 Appellant finally argues that the trial court abused its discretion in declining to entertain the pendent non-federal claim of trespass against All-Rite. Appellant notes the district court found his federal claims to be substantial enough to exercise pendent jurisdiction over his trespass claim against the City of Detroit. Appellant, relying on United Mine Workers v. Gibbs, 383 U.S. 715 (1966), thus argues that since the court heard his trespass claim against the City of Detroit, it should have exercised pendent jurisdiction over his claim against All-Rite because both claims were derived from a common nucleus of operative facts. We disagree and find that the district court did not abuse its discretion in this matter.
 
 
 24
 In Gibbs the court noted that pendent jurisdiction exist where the state and federal claims both derive from a common nucleus of operative facts. Gibbs, 383 U.S. at 725. The court then listed several factors that a lower court should consider in exercising its discretion to accept or decline jurisdiction over pendent state law claims. Id. at 726. However, in contrast to the present action, plaintiff's federal and state law claims in Gibbs were all brought against a single defendant. Gibbs did not deal with the concept of 'pendent party' jurisdiction, in which a federal plaintiff brings is an entirely new party to respond to a state law claim.
 
 
 25
 The Supreme Court considered the question of pendent party jurisdiction in Aldringer v. Howard, 427 U.S. 1 (1976). In Aldringer, plaintiff brought an action against the county treasurer and commissioners claiming that she was discharged from her employment in violation of her civil rights. She based her claim on 42 U.S.C. Sec. 1983. At the time, it was generally accepted that a municipality was not a 'person' within the meaning of the civil rights statute, and thus not subject to suit under Sec. 1983. Plaintiff, however, named the county as a defendant on a vicarious liability theory and asserted jurisdiction based on a pendent party concept. The district court dismissed the action against the county. The court of appeals affirmed.
 
 
 26
 In affirming the decision of the court of appeals, the Supreme Court distinguished its situation from that in Gibbs, noting:
 
 
 27
 The situation with respect to the joining of a new party, however, strikes us as being both factually and legally different from the situation facing the Court in Gibbs and its predecessors. From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant 'derive from a common nucleus of operative fact.' Ibid. True, the same considerations of judicial economy would be served insofar as plaintiff's claims 'are such that he would ordinarily be expected to try them all in one judicial proceeding . . .' Ibid. But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.
 
 
 28
 Alrinder, 427 U.S. at 14. The court further noted that '[t]he question here, which it was not necessary to address in Gibbs and Osborn [v. Bank of the United States, 9 Wheat. 738 (1824)], is whether by virtue of the statutory grant of subject-matter jurisdiction, upon which petitioner's principal claim against the treasurer rests, Congress has addressed itself to the party to whom jurisdiction prudent to the principal claim is sought.' Id. at 16 (emphasis in original).
 
 
 29
 In this case, All-Rite is a private company hired under contract by the City of Detroit to perform demolition work. 42 U.S.C. Sec. 1983 establishes liability against those persons acting under color of state law. Action taken by private individuals may be under color of state law for purposes of 42 U.S.C. Sec. 1983 when significant state involvement attaches to the action. Wagner v. Metropolitan Nashville Airport Authority, 772 F.2d 227 (1985). We find that the demolition of the building by All-Rite was not action taken under color of state law. Thus no federal jurisdiction exists with regard to All-Rite, and the district court did not abuse its discretion in dismissing the pendent claim.
 
 
 30
 Accordingly, for the reasons set forth above, we AFFIRM the judgment of Judge Horace Gilmore, United States District Court, Eastern District of Michigan.
 
 
 
 *
 Honorable Julia S. Gibbons, United States District Court for the Western District of Tennessee, sitting by designation
 
 
 [1]
 As mentioned earlier, the district court dismissed appellant's trespass claim against All-Rite. It held that the claim was a pure state issue and no federal jurisdiction existed